**REDACTED OPINION**

# In the United States Court of Federal Claims

No. 08-597C
Filed: September 25, 2008
Redacted Version Issued for Publication: October 30, 2008[1]

```
* * * * * * * * * * * * * *
                              *
LABATT FOOD SERVICE, INC.,    *    Bid Protest; Standing; Deviation
                              *    from the Solicitation in the Method
                              *    of Transmission of Proposal
              Plaintiff,      *    Revisions; Late Proposal
                              *    Submission; Injunctive Relief.
v.                            *
                              *
UNITED STATES,                *
                              *
              Defendant.      *
                              *
* * * * * * * * * * * * * *   *
```

    **Johnathan M. Bailey**, Bailey & Bailey, P.C., San Antonio, Texas, for the plaintiff.

    **Steven M. Majer**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Gregory G. Katsas**, Assistant Attorney General, **Jeanne E. Davidson**, Director and **Steven J. Gillingham**, Assistant Director, Commercial Litigation Branch.

**O P I N I O N**

<u>HORN, J.</u>

**FINDINGS OF FACT**

    Plaintiff Labatt Food Service, Inc. (Labatt) filed an application for injunctive relief on August 25, 2008, to enjoin the Defense Supply Center Philadelphia (DSC), a subordinate entity under the Defense Logistics Agency (DLA), from proceeding with award of a contract pursuant to Request for Proposals (RFP) SPM300-06-R-0063. The solicitation called for prime vendor support in furnishing a full-line of food and beverage items to military and other federal customers in the Texas and Oklahoma areas. The issues in this post-award

---

[1] This opinion was issued under seal on September 25, 2008. The parties proposed redactions to the opinion, which were incorporated into this version, and reflected in the text of the opinion with "[deleted]."

bid protest relate to the timeliness of protester Labatt's proposal revision, and the method of transmission to the agency of proposal revisions by all three offerors on the RFP, namely Labatt, US Foodservice, Inc. (USF), and Ben E. Keith Foods (BEK).

The solicitation described specifically how proposals and revisions of proposals were to be transmitted to the agency. Initial proposals were to be submitted in paper copy, either hand carried or mailed to the agency. All three offerors to the solicitation complied with this requirement. Labatt's initial proposal was submitted by Federal Express, and the initial proposals from USF and BEK were hand carried to the agency. While initial proposals were to be submitted in paper copy, the solicitation also provided an agency facsimile number, authorizing facsimile as an alternative method of transmission, but for proposal revisions only. Consequently, for proposals and revisions to proposals, e-mail was not an authorized method of transmission, according to the solicitation language.

After receipt and evaluation of the three offerors' initial proposals, the agency e-mailed a July 30, 2007 letter to the offerors. The letter stated that "negotiations are now opened," and requested "additional information or clarification" on technical proposals. The letter also listed modifications to agency requirements, and corrected errors in the solicitation. The agency letter to the offerors stated, in part:

> Your response to the above is required to clarify your proposal. Any revisions, explanations or clarifications must include any price changes resulting from the technical proposal revisions submitted. You may also take this opportunity to enhance any other portions of your proposal, as well.

A facsimile number also was included in the agency letter, which is consistent with the provision in the solicitation permitting transmission of proposal revisions by facsimile number. In spite of the call for transmission to the agency by facsimile in both the solicitation and in the July 30, 2007 agency letter to offerors, inputs from all three offerors were transmitted to the agency via e-mail. Labatt characterizes the agency's July 30, 2007 letter as an "invitation to submit material proposal revisions of both price and technical offers . . . ." The government agrees that substantive proposal revisions resulted from the July 30, 2007 agency letter. The court's review of the agency letter and responses to the letter confirms that the July 30, 2007 agency letter contemplated, and resulted in, proposal revisions from the offerors, for which transmission by facsimile was permitted, but not e-mail.

In a letter to offerors dated September 10, 2007, the agency stated that negotiations and discussions were concluded, and requested final proposal revisions from the offerors. The letter provided an agency facsimile number, which was consistent with the solicitation, to transmit proposal revisions to the agency. In this regard, the September 10, 2007 agency letter stated that, "[i]f a final proposal is not received, your current/revised offer will be used for evaluation purposes." Labatt submitted, by facsimile, a letter indicating that it had no revisions to its earlier proposal, in effect standing on the earlier proposal revisions Labatt had submitted via e-mail. USF did not respond to the September 10, 2007 letter,

similarly remaining with revisions to its earlier proposal submitted by e-mail.  BEK provided proposal revisions by facsimile copy, as specified in both the solicitation and the September 10, 2007 agency letter.  BEK's revisions did not represent a completely new, stand alone proposal, but were changes/additions to its initial proposal and proposal revisions, the latter of which had been submitted by BEK using e-mail.

On November 28, 2007, USF was selected for award of the prime vendor support contract.  Labatt was debriefed on December 7, 2007, filed a Government Accountability Office (GAO) protest on December 12, 2007, and a supplemental protest to the GAO on December 17, 2007.  In response to filing of the protests, the agency took corrective action in the form of issuing amendment no. 0004 to the solicitation.  Amendment no. 0004 to the RFP modified the submission requirements and evaluation criteria of the offerors' experience and past performance.  According to an e-mail to the offerors from the agency, the offerors were to respond to amendment no. 0004 by e-mail.  Prior to the time for response to amendment no. 0004, Labatt e-mailed an April 4, 2008 letter to the contracting officer, raising three questions concerning the amendment.  Labatt characterizes its letter as an agency protest, and further states that the agency's response to its letter was reflected in the agency's issuance of amendment nos. 0005 and 0006 to the solicitation.  Amendment no. 0005 changed the time for the offerors to respond to amendment no. 0004.  Amendment no. 0006 called for supplemental information on experience and past performance.  USF and BEK e-mailed timely responses to amendment nos. 0004, 0005, and 0006.  Labatt timely acknowledged amendment no. 0005 by facsimile copy and timely acknowledged amendment no. 0006 by e-mail.  The government states, however, that Labatt never sent a confirmation of amendment no. 4, an assertion which was never disputed by Labatt, although it had the opportunity to do so in its reply brief.

Labatt filed another GAO bid protest on April 28, 2008.  In response, the agency again took corrective action, in the form of amendment no. 0007 to the solicitation.  Amendment no. 0007 increased estimated annual purchases, the guaranteed minimum, and the maximum dollar ceiling under the contract.  Amendment no. 0007 was provided by the agency to the offerors via e-mail.  In that same e-mail, the offerors were asked to "provide two copies of any submission via FedEx."  According to the cover e-mail, offerors were to respond by May 20, 2008, and according to amendment no. 0007 itself, the offerors were required to respond by May 20, 2008, at 2:00 p.m.  USF made a timely response via United Parcel Service and BEK made a timely response via Federal Express.  Labatt's initial response was transmitted, not by Federal Express, but by e-mail and was received on May 20, 2008, but at 4:27 p.m.  Subsequently, Labatt responded by Federal Express, but this Federal Express response was received on May 22, 2008.  As a result, the contracting officer informed Labatt, by letter dated May 22, 2008, that its response was received by e-mail and that "[e]-mail transmission was not an authorized method of transmission in the above referenced solicitation."  The May 22, 2008 letter also informed Labatt that its e-mail response was late.  The letter further informed Labatt that its subsequent response by Federal Express also was late and would be held unopened.  On June 2, 2008, Labatt filed an agency protest on the lateness and e-mail issues, which was denied by the agency on June 2, 2008.  On June 30, 2008, Labatt submitted a protest to the GAO, raising both the

3

lateness issue and the method of transmission issue, which was denied by the GAO in an August 18, 2008 decision.  The protest in this court was filed on August 25, 2008, raising the same two issues.  This opinion memorializes in writing the decision of the court issued during an on-the-record conference with all parties present held on September 17, 2008. The decision was issued on that date in order to meet the deadline the government designated for issuing a notice to proceed.  The decision was effective on September 17, 2008.

**DISCUSSION**

Standard of Review

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)-(4) (2000)), amended the Tucker Act, providing the United States Court of Federal Claims with post-award bid protest jurisdiction, and providing a statutory basis for its pre-award bid protests.  See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001).  The statute provides that protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable the standards outlined in Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970) and the line of cases following that decision.  See, e.g., Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing Scanwell for its reasoning that "suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law."), reh'g denied (Fed. Cir. 2004); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003).

Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (2)(D) (2000)[2]; see also

_____

[2]   The full language of section 706 of the APA provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions

4

Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A) (2000))); Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).   In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit specifically addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706.  See Impresa Contruzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5; see also NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted); Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000))); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'  5 U.S.C. § 706(2)(A) (2000).").

In the Garufi case, the court wrote:

---

found to be--
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Under the APA standards that are applied in the <u>Scanwell</u> line of cases, a bid award may be set aside if either: (1) [T]he procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure. . . .  When a challenge is brought on the first ground, the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process.  <u>Latecoere Int'l, Inc. v. United States Dep't of Navy</u>, 19 F.3d 1342, 1356 (11th Cir. 1994).  Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," <u>id.</u>, and the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" <u>Saratoga Dev. Corp. v. United States</u>, 21 F.3d 445, 456 (D.C. Cir. 1994).  When a challenge is brought on the second ground, the disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations." <u>Kentron [Hawaii, Ltd. v. Warner,]</u> 480 F.2d [1166,] 1169 [(D.C. Cir. 1973)]; <u>Latecoere</u>, 19 F.3d at 1356.

<u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332-33 (selected citations omitted); <u>see</u> <u>also</u> <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d at 1351; <u>OMV Med., Inc. v. United States</u>, 219 F.3d 1337, 1343 (Fed. Cir. 2000).

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence.  <u>See</u> <u>Grumman Data Sys. Corp. v. Dalton</u>, 88 F.3d 990, 995-96 (Fed. Cir. 1996); <u>Textron, Inc. v. United States</u>, 74 Fed. Cl. 277, 285 (2006), <u>appeal</u> <u>dismissed</u> <u>sub</u> <u>nom.</u> <u>Textron, Inc. v. Ocean Technical Servs., Inc.</u>, 222 F. App'x 996 (Fed. Cir.), 223 F. App'x 974 (Fed. Cir. 2007); <u>Labat-Anderson Inc. v. United States</u>, 50 Fed. Cl. 99, 106 (2001); <u>Emery Worldwide Airlines, Inc. v. United States</u>, 49 Fed. Cl. 211, 222, <u>aff'd</u>, 264 F.3d 1071 (Fed. Cir.), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en banc</u> <u>denied</u> (Fed. Cir. 2001); <u>Dynacs Eng'g Co. v. United States</u>, 48 Fed. Cl. 614, 619 (2001); <u>Ellsworth Assocs., Inc. v. United States</u>, 45 Fed. Cl. 388, 392 (1999), <u>appeal</u> <u>dismissed</u>, 6 F. App'x 867 (Fed. Cir. 2001).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

The agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983); <u>see</u> <u>also</u> <u>In re Sang Su Lee</u>, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("The agency must present a full and reasoned explanation of its decision . . . .  The reviewing court is

thus enabled to perform a meaningful review . . . . "), aff'd on subsequent appeal, 262 F. App'x 275 (Fed. Cir. 2008); Textron, Inc. v. United States, 74 Fed. Cl. at 285-86.

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency."). "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)); see also Seaborn Health Care, Inc. v. United States, 55 Fed. Cl. 520, 523 (2003) (quoting Honeywell, Inc. v. United States, 870 F.2d at 648 (quoting M. Steinthal & Co. v. Seamans, 455 F.2d at 1301)).

As stated by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (citations omitted); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. ITC, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion otherwise not in accordance with the law" standard, the Federal Circuit stated that "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang-Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. United States, 4 F.3d 955, 959 (Fed. Cir. 1993); Gulf Group Inc. v. United States, 61 Fed. Cl. 338, 351 (2004) ("Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. at 392 ("Courts must give great deference to agency procurement

decisions and will not lightly overturn them." (citing <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44 (1985))).

Similarly, in <u>E.W. Bliss Co. v. United States</u>, the United States Court of Appeals for the Federal Circuit offered guidance on the applicable standard of review:

> Procurement officials have substantial discretion to determine which proposal represents the best value for the government. <u>See</u> <u>Lockheed Missiles & Space Co., Inc. v. Bentsen</u>, 4 F.3d 955, 958 (Fed. Cir. 1993); <u>cf.</u> <u>Widnall v. B3H</u>, 75 F.3d 1577 (Fed. Cir. 1996) (holding that Board of Contract Appeals should defer to agency's best value decision as long as it is "grounded in reason . . . even if the Board itself might have chosen a different bidder"); <u>In re General Offshore Corp.</u>, B-251969.5, B-251969.6, 94-1 Comptroller Gen.'s Procurement Decisions (Federal Publications Inc.) ¶ 248, at 3 (Apr. 8, 1994) ("In a negotiated procurement, any proposal that fails to conform to material terms and conditions of the solicitation should be considered unacceptable and may not form the basis for an award. Where an evaluation is challenged, we will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statutes and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion.") (citations omitted).
>
> * * *
>
> Bliss' [other challenges to the procurement] deal with the minutiae of the procurement process in such matters as technical ratings . . . which involve discretionary determinations of procurement officials that a court will not second guess. <u>See</u> <u>Lockheed Missiles & Space Co.</u>, 4 F.3d at 958; <u>Grumman Data Systems Corp. v. Widnall</u>, 15 F.3d 1044, 1048 (Fed. Cir. 1994) ("[S]mall errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement.") . . . .

<u>E.W. Bliss Co. v. United States</u>, 77 F.3d 445, 449 (Fed. Cir. 1996); <u>see</u> <u>also</u> <u>Galen Med. Assocs., Inc. v. United States</u>, 74 Fed. Cl. 377, 383-84 (2006); <u>JWK Int'l Corp. v. United States</u>, 49 Fed. Cl. 371, 388 (2001), <u>aff'd</u>, 279 F.3d 985 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2002).

The Federal Circuit also has stated:

> Effective contracting demands broad discretion. <u>Burroughs Corp. v. United States</u>, 617 F.2d 590, 598 (Ct. Cl. 1980); <u>Sperry Flight Sys. Div. v. United States</u>, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); <u>see</u> <u>NKF Eng'g, Inc. v. United States</u>, 805 F.2d 372, 377 (Fed. Cir. 1986); <u>Tidewater Management Servs., Inc. v. United States</u>, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); <u>RADVA Corp. v. United States</u>, 17 Cl. Ct. 812, 819 (1989), <u>aff'd</u>, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the

Government." <u>Tidewater Management Servs.</u>, 573 F.2d at 73, 216 Ct. Cl. 69.

. . .

<u>Lockheed Missiles & Space Co., Inc. v. Bentsen</u>, 4 F.3d at 958-59; <u>see also</u> <u>Galen Med.</u>
<u>Assocs., Inc. v. United States</u>, 369 F.3d at 1330; <u>Grumman Data Sys. Corp. v. Dalton</u>, 88
F.3d at 995; <u>Grumman Data Sys. Corp. v. Widnall</u>, 15 F.3d at 1046; <u>PHT Supply Corp. v.</u>
<u>United States</u>, 71 Fed. Cl. 1, 11 (2006).

 Barring arbitrary and capricious behavior or a violation of law, the wide discretion
afforded contracting officers extends to a broad range of procurement functions, including
the determination of what constitutes an advantage over other proposals.   <u>See</u>
<u>Compubahn, Inc. v. United States</u>, 33 Fed. Cl. 677, 682-83 (1995) ("[T]his court is in no
position to challenge the technical merit of any comments made on the evaluation sheets
or decisions made during the several stages of evaluation.")  (footnote omitted)); <u>see also</u>
<u>Textron, Inc. v. United States</u>, 74 Fed. Cl. at 286 (in which the court considered technical
ranking decisions "minutiae of the procurement process" not to be second guessed by a
court) (quoting <u>E.W. Bliss Co. v. United States</u>, 77 F.3d at 449).   The question is not
whether the court would reach the same conclusions as the agency regarding the
comparison of proposals, but, rather, whether the conclusions reached by the agency
lacked a reasonable basis and, therefore, were arbitrary or capricious, in which case, courts
have a role to review and instruct.

 To prevail in a bid protest case, the protester not only must show that the
government's actions were arbitrary, capricious, or otherwise not in accordance with the
law, but the protestor also must show that it was prejudiced by the government's actions.
<u>See</u> 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error").
Recognizing the two-step analysis of bid protest cases, the Federal Circuit has stated that:

> A bid protest proceeds in two steps.  First . . . the trial court determines
> whether the government acted without rational basis or contrary to law when
> evaluating the bids and awarding the contract.  Second . . . if the trial court
> finds that the government's conduct fails the APA review under 5 U.S.C. §
> 706(2)(A), then it proceeds to determine, as a factual matter, if the bid
> protester was prejudiced by that conduct.

<u>Bannum, Inc. v. United States</u>, 404 F.3d at 1351.  In describing the prejudice requirement,
the United States Court of Appeals for the Federal Circuit has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial
> error in the procurement process. See <u>Statistica, Inc. v. Christopher</u>, 102
> F.3d 1577, 1581 (Fed. Cir. 1996); <u>Data Gen. Corp. v. Johnson</u>, 78 F.3d
> 1556, 1562 (Fed. Cir. 1996).  "To establish prejudice, a protester is not
> required to show that but for the alleged error, the protester would have
> been awarded the contract."  <u>Data General</u>, 78 F.3d at 1562 (citation
> omitted).  Rather, the protester must show "that there was a substantial

chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award--that it was within the zone of active consideration.'") (citation omitted).

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir.), reh'g denied (Fed. Cir. 1999) (citation omitted in original); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1331; Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33; OMV Med., Inc. v. United States, 219 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057; Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000).

In Data General Corporation v. Johnson, the United States Court of Appeals for the Federal Circuit wrote:

We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract . . . . The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances.

This is a refinement and clarification of the "substantial chance" language of CACI, Inc.-Fed., 719 F.2d at 1574.

Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1996); see also Bannum, Inc. v. United States, 404 F.3d at 1353, 1358 ("The trial court was required to determine whether these errors in the procurement process significantly prejudiced Bannum. . . . To establish 'significant prejudice' Bannum must show that there was a 'substantial chance' it would have received the contract award but for the [government's] errors" in the bid process. (quoting Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Alfa Laval Separation, Inc. v. United States, 175 F.3d at 1367; Statistica, Inc. v. Christopher, 102 F.3d at 1581; and Data Gen. Corp. v. Johnson, 78 F.3d at 1562)); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1331 ("To establish prejudice, the claimant must show that there was a 'substantial chance it would have received the contract award but for that error.'" (quoting Statistica, Inc. v. Christopher, 102 F.3d at 1582; Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d at 1370 (using the "substantial chance" standard); OMV Med.,

Inc. v. United States, 219 F.3d at 1342 (invoking a "reasonable likelihood" of being awarded the contract test); Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057 (using a "reasonable likelihood" rule); Stratos Mobile Networks USA, LLC v. United States, 213 F.3d at 1380 (using a "substantial chance" test); Info. Scis. Corp. v. United States, 73 Fed. Cl. 70, 96 (2006) (using a "substantial chance" test), recons. in part, 75 Fed. Cl. 406, 412 (2007) (using a "substantial chance" test); Park Tower Mgmt., Ltd. v. United States, 67 Fed. Cl. 548, 559 (2005) (using a "substantial chance" test).

### Solicitation Prescribed Method for Transmission of Proposal Revisions

Under the terms of the solicitation, e-mail was not an authorized method of transmission for proposal revisions. The solicitation explicitly directed paper copies to be delivered by hand or mailed for initial proposals, or delivered by facsimile for proposal revisions. Nevertheless, all three offerors used e-mail, a method not authorized, as the form of transmission for proposal revisions and other substantive responses to the agency. Proposal revisions were submitted via e-mail by Labatt, USF, and BEK in response to the agency's July 30, 2007 letter to the offerors. All three of these e-mail submissions were substantive changes to the initial proposals, were a major part of the final proposals submitted by each offeror and, therefore, were used for the final evaluation and award selection by the agency. Solicitation amendment no. 0004 provided an opportunity for the offerors to submit additional information regarding the areas of experience and past performance, and amendment no. 0005 changed the time to respond to amendment no. 0004. USF and BEK responded to amendment nos. 0004 and 0005 by e-mail. Amendment no. 0006 called for supplemental information on experience and past performance, which all parties agreed at the oral argument constituted a substantive proposal revision. Labatt, USF, and BEK responded to amendment no. 0006 via e-mail. Amendment no. 0007 also was substantive in that offerors were required to acknowledge and accept material changes to the solicitation, such as the government's minimum ordering requirements and the government's maximum obligation. Although USF and BEK responded to amendment no. 0007 via Federal Express, Labatt used e-mail to respond.

FAR 15.208(a) provides that "[o]fferors may use any transmission method authorized by the solicitation (i.e., regular mail, electronic commerce, or facsimile)." 48 C.F.R. § 15.208(a) (2007). The solicitation in the present case provided for mail and hand-carrying of proposals, and facsimile copies of proposal revisions, but not for the use of e-mail.

In A & D Fire Protection, Inc., the solicitation stated that bid bonds were to be submitted by mail or hand delivery, and that facsimile or e-mail submissions were not permitted. A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 137 (2006). There was circumstantial evidence that if A & D submitted a bid bond it had done so by facsimile copy. Id. The A & D court noted that, without a bid bond, an offeror's proposal "must be considered nonresponsive." Id. The A & D court continued, analogizing to offerors' proposals:

Proposals submitted by means forbidden by a solicitation's terms must be rejected, because they are nonresponsive. *See, e.g.,* Integrated Bus. Solutions, Inc., B-292,239, 2003 CPD ¶ 122, 2003 WL 21659403 (Comp. Gen. July 9, 2003) (upholding the rejection of a proposal sent by email because email transmission was not permitted by the solicitation); G.D. Searle & Co., B-247,077, B-247,146, 92-1 CPD ¶ 406, 1992 WL 94903 (Comp. Gen. Apr. 30, 1992) (upholding the rejection a proposal sent by facsimile because facsimile transmission was not permitted by the solicitation).

Id. at 139; see also GROH GmbH, B-291980, 2003 CPD ¶ 53, 2003 WL 1564331, at *2 (Comp. Gen. Mar. 26, 2003) (proposal sent by facsimile was rejected where proposals were required to be submitted in paper media and facsimile copies were unauthorized). After review of the solicitation, the FAR, and case authority, the court similarly concludes that in the present case e-mail was not an authorized method of transmission for proposal revisions in the solicitation, that all offerors used e-mail to submit proposal revisions, and that deviation from the solicitation renders the proposal revisions from all offerors unable to be considered by the agency.

Defendant argues that the method of transmission falls under language in FAR clause 52.212-1(g), a clause contained in the contract, which provides that the government may "waive informalities and minor irregularities in offers received." By way of support, defendant cites to the United States Court of Claims case of Excavation Construction, Inc. v. United States, 204 Ct. Cl. 299, 494 F.2d 1289 (1974), which approved the waiver of two errors by the agency in an offeror's proposal as minor informalities. The waived errors in Excavation Construction were an incorrect date on an acknowledgment of the receipt of an amendment to the solicitation, cured by a subsequent acknowledgment of a supplementary amendment with the correct date, and use of the original solicitation number on a bid bond, mooted by other indicia in the bid bond which made clear the project to which the bond related. Id., 204 Ct. Cl. at 303-07, 494 F.2d at 1291-93. The present deviation from the solicitation by the offerors in the case under review by this court is not similar to or as minor as the clerical, corrected errors found in the Excavation Construction case. See also JWK Int'l Corp. v. United States, 49 Fed. Cl. 371, 396 (2001) (two pages added to a proposal were considered a minor informality which the agency could waive pursuant to the solicitation), aff'd, 279 F.3d 985 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Griffy's Landscape Maintenance LLC v. United States, 46 Fed. Cl. 257, 258-261 (2000) (the government had the duty to inquire as to missing, but easily available insurance contact information when dealing with a recurrent contractor); AABCO, Inc. v. United States, 3 Cl. Ct. 109, 120 (1983) (the omission of a zero in front of four digits, as a result of ambiguous solicitation instructions, was considered a correctable, minor irregularity).

Defendant does not cite a case in its favor discussing deviation from the solicitation in methods of transmission. For its part, the court adheres to the clear and unambiguous solicitation language; to FAR 15.208(a), which states, "[o]fferors may use any transmission method authorized by the solicitation (i.e., regular mail, electronic commerce, or facsimile";

12

and to the cases cited above, which have rejected proposals submitted via methods unauthorized by the solicitation.

Defendant nevertheless argues that, "The decision of whether a deviation or error constitutes a waivable informality is one of discretion [in the government]."  In this regard, the court in Geo-Seis, addressing not method of transmission, but late submission of proposals, observed that,

> adopting the government's construction of the "late is late" rule would allow the government arbitrarily to claim in some circumstances that the rule precludes it from considering a late proposal and in other circumstances to assert that the rule is not a bar to issuing amendments to the solicitation that would permit such consideration.

Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 645-46 (2007).  Similarly, acceding to government discretion to declare the method of transmission to be a minor informality would potentially create uncertainty and confusion, permit potential manipulation of the procurement process, and allow for unequal treatment and competitive advantage/disadvantage to selected offerors.  Defendant's view appears to be that the language explicitly written by the government into the solicitation regarding the method of submission of proposals and revisions can be altered by the agency at will, even without notifying the offerors, and even after offers have been submitted in final form.  However, the solicitation did not authorize e-mail submissions of proposal revisions and the agency did not amend the solicitation along these lines.  As the author of the solicitation, presumably the government had a purpose to require a particular form of proposal or revision submission.  The solicitation defines the terms by which the procurement is to be conducted with equal applicability to all parties, as required for procurement integrity and fairness.  After the fact, unilateral revisions, without amendment and notification to the offerors before final submissions, violate the fundamental fairness of the procurement process and in this case the FAR.

Defendant also tries to argue that since the agency requested that the responses to solicitation amendment no. 0004 be sent by e-mail, the agency "effectively amended the solicitation to permit submission by such means."  However, the acceptability of e-mail was made known to the parties only for amendment no. 0004, and not for the rest of the procurement.  In particular, the agency did not suggest to the offerors, even informally, that e-mail was acceptable for the proposal revisions called for by the agency's earlier, July 30, 2007 proposal revision letter, to which all offerors had responded with substantive changes made part of their final offers via e-mail.  Informal agency action purporting to authorize e-mail responses was limited to this one amendment of the seven amendments issued, and did not formally amend the solicitation language or method of submission.  As noted above, the proposal revisions in response to the agency's July 30, 2007 letter, transmitted by an unauthorized method, remained a material part of the procurement and were used to evaluate the proposals and to make the award.

13

Lateness and Standing

Defendant also argues that plaintiff's response to solicitation amendment no. 0007 was untimely, that plaintiff cannot demonstrate prejudice, and that plaintiff, therefore, has no standing to challenge agency acceptance of e-mail revisions to proposals.

Amendment no. 0007 increased the solicitation's guaranteed minimum and maximum dollar values in the Statement of Work.  Labatt argues that, although solicitation amendment no. 0007 provided for a May 20, 2008, 2:00 p.m. deadline, the cover e-mail to which amendment no. 0007 was attached mentioned only the May 20, 2008 date, and not the 2:00 p.m. deadline.  Labatt continues, when no time is specified, FAR clause 52.212-1(f), which was incorporated into the solicitation, provides for a default, 4:30 p.m. time.  "If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated government office on the date that offers or revisions are due."  48 C.F.R. § 52.212-1(f) (2007).  However, in this case, the time was "specified in the solicitation," that is, amendment no. 0007 specified 2:00 p.m.  Therefore, plaintiff's argument in favor of a later time for receipt of its response to amendment no. 0007 is without merit.  At oral argument, Labatt's counsel admitted as much: "The truth is that ... the person responsible for submitting the response [to amendment no. 0007], simply missed the 2:00 p.m.," making Labatt untimely, or in the words of Labatt's counsel, "[c]ase over," at least on the timeliness issue.  Labatt's response to amendment no. 0007 was late and, therefore, could not be considered by the agency.  Having submitted a late response to solicitation amendment no. 0007, in the simple case, there would not only not be a substantial chance or reasonable likelihood of receiving the award, there would be no chance for award.  However, the matter currently before the court is not straightforward and is controlled by the Federal Circuit's analysis in Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001) (referred to below as the Garufi case).

The Tucker Act requires that a protester be "an interested party" in order to bring a bid protest against a federal procurement.  29 U.S.C. § 1491b)(1) (2000).  "In order to establish standing, ITAC [plaintiff-appellant] must show that it is an 'actual or prospective bidder [ ] [or offeror [ ] whose direct economic interest would be affected by the award of the contract or by failure to award the contract,' i.e., that ITAC was an interested party, prejudiced by the award to RSIS [defendant-appellee]."  Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002)); see also Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006); Infrastructure Def. Techs., LLC v. United States,  81 Fed. Cl. 375, 384 (2008).

To have standing to bring a protest, Labatt also must demonstrate that it has been prejudiced.  As noted above, to demonstrate prejudice a plaintiff must show there was a substantial chance it would have received the contract award.  Rex Serv. Corp. v. United States, 448 F.3d at 1308; Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Alfa Laval Separation, Inc. v. United States 175 F.3d at 1367; Infrastructure Def. Techs., LLC v. United States, 81 Fed. Cl. at 387.

14

To establish standing, Labatt equates itself with the protester in the Garufi case, in which the protester was found to have standing to bring the protest.  Protester Garufi brought a bid protest in the United States Court of Federal Claims, alleging that the agency made an improper evaluation of its technical proposal which led to the exclusion of Garufi from the competitive range, and also that the agency made an arbitrary and capricious responsibility determination with respect to the awardee.  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1329.  The trial court decided the elimination from the competitive range issue against Garufi, and then decided that Garufi lacked standing to challenge the responsibility determination of the awardee, because Garufi, which was outside of the competitive range, would not have been in a position to receive the award if the initial awardee had been disqualified for lack of responsibility.  Id. at 1330.

The Federal Circuit affirmed in part, reversed in part, and remanded.  Id. at 1341.  The Federal Circuit upheld the trial court's elimination of protester Garufi from the competitive range.  Id. at 1340.  However, the Federal Circuit reversed the trial court's upholding of the agency's responsibility determination, and remanded for additional discovery on the responsibility issue.  Id. at 1330, 1338-40.  As for standing, even though the protester was properly eliminated from the competitive range, and normally, therefore, would not be able to show that it had a substantial chance, or any chance, for award, the Federal Circuit stated:

> This case is unlike other cases where we have found that (1) a contractor that did not submit a proposal did not have an economic interest, (2) a bidder who withdrew from the procurement did not have an economic interest, or (3) a bidder rated below second lacked the required "direct economic interest in the award of the contract[.]"  In those cases, the bid protester had no economic interest in the outcome since, if the protest were successful, the award would go to another party.  In this case, as the government has conceded at oral argument, if appellant's bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government would be obligated to rebid the contract, and appellant could compete for the contract once again.  Under these circumstances, the appellant has a "substantial chance" of receiving the award and an economic interest and has standing to challenge the award.

Id. at 1334 (citations omitted).

The present case is similar to the standing issue in the Garufi case.  This court has upheld the agency's decision, that Labatt submitted a late response to amendment no. 0007.  This would normally mean that Labatt could not show a substantial chance, or any chance, for award.  In this case, however, if Labatt were to prevail on its argument that e-mail for proposal revisions was a deviation from the solicitation, such that all of the offerors' proposals, back to the offerors' e-mail material proposal revisions in response to the government's July 30, 2007 agency letter, should not have been considered, then the

competition is fatally flawed since all the proposals which were finally evaluated include the information e-mailed in response to the government's July 30, 2007 letter.  Labatt, which appears from the record to have come in a [deleted] in the evaluation, would have an substantial chance of award in a rebid of the procurement.  In fact, the procurement became flawed as to all three offerors long before responses to amendment 0007 were submitted late or otherwise.

As to whether Labatt was in line for award, in the evaluation which led to the selection of USF, the record reflects that both Labatt and USF [deleted] proposed by both offerors.  The court concludes that Labat would have a substantial chance of receiving the award if the agency rebids the contract.  Labatt, therefore, has standing to bring this protest.

Defendant argues, however, that Labatt was not prejudiced because all of the offerors used e-mail at one point or another.  Based on the record before it, the GAO seemed to have agreed with this argument. Labatt Food Service, Inc., B-310939.6, slip op. at 3 (Comp. Gen. Aug. 18, 2008).  However, the record before this court reflects that, though use of e-mail permeated the procurement process, and was used by all three offerors, Labatt was the only offeror cited for using an unauthorized method of transmission, at the end of the procurement process.  On May 22, 2008, Labatt received a letter from the agency, only for solicitation amendment no. 0007, telling Labatt that its e-mail response "was not an authorized method of transmission in the above referenced solicitation."  This was, fundamentally, unequal and erratic treatment.  The May 22, 2008 letter to Labatt also indicated that plaintiff's proposal was submitted late.

Defendant next asserts that, "Labatt was not eliminated [from the competition] for a method of submission," but solely for lateness, citing to a June 23, 2008 letter from the government to Labatt in response to plaintiff's inquiry following the May 22, 2008 agency letter, also telling plaintiff its proposal would not be considered.  The government attempts to make the distinction in order to use it as the basis for arguing that Labatt does not have a direct economic interest in the procurement and, therefore, no standing to bring this lawsuit.  Defendant stated in its submission to the court:

> Labatt's response to a material amendment was late, and therefore, it cannot be properly considered for award.  Accordingly Labatt cannot establish that "there was a substantial chance it would have received the contract award" but for the errors it alleges. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).

Labatt characterizes defendant's argument as "revisionist history," and the court agrees.  The May 22, 2008 letter sent by the agency to Labatt stated:

> Your proposal revision concerning the above referenced solicitation was received by e-mail transmission on May 20, 2008 at 4:27 P.M.  E-mail

16

transmission was not an authorized method of transmission in the above referenced solicitation. Moreover, the closing date and time was May 20, 2008 at 2:00 P.M. and therefore the transmission was untimely in any event.

Additionally, a proposal revision was received via Federal Express on May 22, 2008 at 10:27 A.M. However, that package was not received prior to the exact time specified for receipt of proposals, is consider "late," and will not be considered. As such, the submissions referenced in this letter are not being considered.

The above language of the agency letter leads the court to the conclusion that the agency rejected Labatt's proposal because it was transmitted by e-mail, an unauthorized method of transmission, and because it was late. A month later, on June 23, 2008, the agency sent the second letter to Labatt. The second letter references the earlier, May 22, 2008 letter to Labatt, but conspicuously missing from the second letter is any additional reference to the e-mail method of transmission for also rejecting Labatt's proposal. However, at a September 17, 2008 hearing before the court, government counsel at least acknowledged that "the government did raise the issue of the method of submission" to Labatt. The court concludes that the e-mail error used as one of the grounds in the May 22, 2008 letter to reject Labatt's proposal cannot be erased from the record, however much the government would like to try.

On this point, although taking a different approach on other issues from this court, the GAO appears to have read the record the same way the court reads it. In its August 18, 2008 decision on the Labatt protest, the GAO wrote: "At issue is the mode of transmission permitted by the RFP. As a general matter, offerors may use any transmission method authorized by the solicitation. Federal Acquisition Regulation (FAR) § 15.208(a). . . . On May 22, [2008] the agency informed the protester [Labatt] that its proposal was transmitted by e-mail, which was not an authorized transmission method, and that it was submitted late." Labatt Food Service, Inc., B-310939.6, slip op. at 2 (Comp. Gen. Aug. 18, 2008) (brackets added).

In Garufi, the protester lost its competitive range argument, but was accorded standing because, if its responsibility argument prevailed, there would need to be a rebid of the procurement. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1334. In the present case, Labatt lost its lateness argument, but is accorded standing because Labatt's deviation from the solicitation argument as to the required method of transmission for proposal revisions has prevailed. Therefore, if there is a need to rebid the procurement, Labatt would have a substantial chance for award.

Given the [deleted], and Labatt's [deleted], which were reflected in the record and not disputed by defendant, there is a substantial chance Labatt would receive award on a rebid of the procurement. The government, unrepentant as to its casual use of e-mail and deviation from the solicitation, apparently wishes to ignore the deviation, further wishes to

17

effectively wipe its May 22, 2008 letter, with the letter's references to e-mail, from the record and, finally, wishes to proceed with its flawed award, rather than rebid and correct the error.  The court does not concur with defendant's approach.

Finally, defendant also argues that plaintiff should have protested sooner, and that Labatt waived its challenge to e-mail, citing the United States Court of Federal Claims case of Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1313 (patent errors in a solicitation are waived if not raised before the close of the bidding process).  This is a peculiar argument, given the agency's posture of broadly using and accepting e-mail, including agency instructions to offerors to respond to amendment no. 0004 via e-mail, and also given the agency's argument that it had changed the method of transmission to e-mail, informally, even without amending the solicitation or notifying prospective offerors. Defendant apparently did not view e-mail to be a patent error, until the end of the procurement process when it cited Labatt, and only Labatt, for unauthorized use of e-mail. Labatt was the only offeror to be so informed, at any time during the procurement process. Moreover, when the agency began the enforcement of e-mail against Labatt, Labatt filed an agency protest, then a GAO protest.  The important Blue & Gold Fleet principles should be applied only in appropriate cases.  Under the above facts and circumstances, the court does not find that Labatt waived its right to protest.

Fundamentally, this procurement was flawed from an early stage.  The proposal revisions, which survived in some form for evaluation and award, were submitted by an unauthorized method of transmission and should not have been considered as a basis for award by the agency.  The remedy is to rebid if the procurement of goods and services are still required by the agency.

<u>Injunctive Relief</u>

Labatt seeks injunctive relief.  As a general rule, courts should interfere with the government procurement process "only in extremely limited circumstances."  Banknote Corp. of Am., Inc. v. United States, 56 Fed. Cl. 377, 380 (2003) (quoting CACI, Inc.-Fed. v. United States, 719 F.2d at 1581) (quoting United States v. John C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983))), aff'd, 365 F.3d 1345 (Fed. Cir. 2004); see also Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir.) (finding a preliminary injunction to be a "drastic and extraordinary remedy that is not to be routinely granted"), reh'g denied, en banc suggestion declined (Fed. Cir. 1993), cert. denied, 510 U.S. 1092 (1994); Mantech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. at 64 (emphasizing that injunctive relief is not routinely granted) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).

The decision on whether or not to grant an injunction is within the sound discretion of the trial court.  See FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993); Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1578 (Fed. Cir. 1990).  Confirming the difficult nature of obtaining injunctive relief in a bid protest case, the United States Court of Appeals for the Federal Circuit has stated that even if a

trial court finds that the government's actions in soliciting and awarding a contract were arbitrary, capricious, or not in accordance with law, the trial court retains discretion on whether to issue an injunction. See PGBA, LLC v. United States, 389 F.3d 1219, 1225-26 (Fed. Cir. 2004) (finding that the statutory scheme for reviewing procurement decision "does not deprive a court of its equitable discretion in deciding whether injunctive relief is appropriate," and that 28 U.S.C. § 1491(b)(4) "does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award."). Once injunctive relief is denied, "the movant faces a heavy burden of showing that the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence." FMC Corp. v. United States, 3 F.3d at 427.

To obtain a temporary restraining order or preliminary injunction, the plaintiff must carry the burden of establishing entitlement to extraordinary relief based on the following factors:

> (1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties.

U.S. Ass'n of Imps. of Textiles and Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1346 (Fed. Cir. 2005) (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983)); see also Pharm. Research and Mfrs. of Am. v. Walsh, 538 U.S. 644, 670 (2003) (requiring a movant for preliminary injunction to prove that the "probability of success on the merits of its claims . . . the risk of irreparable harm, the balance of the equities, and the public interest" weigh in the movant's favor); Somerset Pharms., Inc. v. Dudas, 500 F.3d 1344, 1346 (Fed. Cir. 2007) ("To establish entitlement to a preliminary injunction a movant must establish a reasonable likelihood of success on the merits." (citing Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004))); Seaborn Health Care, Inc. v. United States, 55 Fed. Cl. 520, 523-24 (2003); OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001) ("When deciding if a TRO [temporary restraining order] is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction." (quoting W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638, 647 (1997))); Dynacs Eng'g Co. v. United States, 48 Fed. Cl. at 616. The standard of proof required for injunctive relief is a preponderance of the evidence, Textron, Inc. v. United States, 74 Fed. Cl. at 287, Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004), or, demonstration of a fact as "more likely than not," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2513 (2007) (citing Herman & MacLean v. Huddleston, 459 U.S. 375, 390 (1983)).

The test for a permanent injunction is almost identical to that for a temporary restraining order or preliminary injunction, but rather than the likelihood of success on the merits, a permanent injunction requires actual success on the merits. See Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987) (holding that the standard for permanent injunction is the same as that for preliminary injunction, with the one exception being that the plaintiff must show actual success on the merits, rather than

likelihood of success).  In <u>PGBA, LLC v. United States</u>, the Federal Circuit set out the test for a permanent injunction, stating that a court must consider:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

<u>PGBA, LLC v. United States</u>, 389 F.3d at 1228-29 (citing <u>Amoco Prod. Co. v. Vill. of Gambell, Alaska</u>, 480 U.S. at 546 n.12); <u>see also</u>  <u>Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.</u>, 357 F.3d at 1325 (finding that a plaintiff who cannot demonstrate actual success on the merits cannot prevail on its motion for permanent injunctive relief); <u>PHT Supply Corp. v. United States</u>, 71 Fed. Cl. at 12; <u>Int'l Res. Recovery, Inc. v. United States</u>, 64 Fed. Cl. 150, 159 (2005); <u>Hunt Bldg. Co. v. United States</u>, 61 Fed. Cl. 243, 279, <u>opinion modified</u>, 63 Fed. Cl. 141 (2004); <u>Bean Stuyvesant, L.L.C. v. United States</u>, 48 Fed. Cl. 303, 320-21 (2000) (citing <u>Hawpe Constr., Inc. v. United States</u>, 46 Fed. Cl. 571, 582 (2000), <u>aff'd</u>, 10 F. App'x 957  (Fed. Cir. 2001)); <u>ATA Def. Indus., Inc. v. United States</u>, 38 Fed. Cl. 489, 505 n.10 (1997) ("'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.'" (quoting <u>Amoco Prod. Co. v. Village of Gambell, Alaska</u>, 480 U.S. at 546 n.12)).

The court finds that the method of e-mail transmission of proposal revisions employed by all the offerors in the procurement in question was not authorized by the solicitation.  The court concludes that Labatt has succeeded on the merits of its protest. There is a public interest in saluting the language of solicitations, and if the agency desires to change that language, to do so by formal amendment, in order to reduce confusion and to ensure that changes are applied equally to all prospective offerors.  The record reflects that e-mail permeated the procurement process, but only Labatt was informed that its use was unauthorized.  Agency discretion to waive solicitation requirements, at different times in the same procurement, and perhaps towards one offeror, but not another, renders the procurement process subject to manipulation and unfair competitive advantage.  The government issued the solicitation and prescribed the methods of transmission and, at the end of the day, the agency issued seven amendments on other matters, and could have amended the method of transmission and obviated this litigation by a timely, formal amendment, but did not do so.  Instead, the agency sent mixed signals, using e-mail itself and accepting e-mail responses from all the offerors.  But for the first time, at the end of the process, and only as to Labatt, the agency stated: "Your proposal revision concerning the above referenced solicitation was received by e-mail transmission on May 20, 2008, at 4:27 P.M.  E-mail transmission was not an authorized method of transmission in the above referenced solicitation."  Apparently, the agency, after using and accepting e-mail, had at this late point in the procurement decided to enforce the submission terms of the solicitation against one offeror, despite the fact that substantive proposal revisions, which were evaluated by the agency and upon which selection for award was made, and which

remained as a material part of this procurement, were submitted earlier via e-mail, not only by Labatt, but awardee USF, as well as competitor BEK.   Under these facts and circumstances, the court looks to and enforces the terms of the solicitation.   At the conference on September 17, 2008, the court issued a permanent injunction, effective September 17, 2008.   The agency award to USF, and the procurement, are vacated. Labatt should be permitted to compete on any rebid of the procurement.

## CONCLUSION

The court issued its ruling in this case on September 17, 2008, effective on the same date, as reflected in the transcript of those proceedings.  This written opinion memorializes that ruling.  The procurement pursuant to solicitation SPM300-06-R-0063 and the award to USF are vacated.  If the agency rebids the procurement, Labatt should be permitted to compete.  Defendant's motion for judgment upon the administrative record is denied.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**